## R. E. POE v. THE WHITE COMPANY.

Western Section.    February 11, 1928.

Joe Frassrand, of Chattanooga, for appellant.

T. W. Stanfield, of Chattanooga, for appellee.

HEISKELL, J.   We have compared the Chancellor's finding of facts in this case with the record and find it correct.   We therefore,

set it out in full as a concise yet full statement of the purposes and contentions of the suit, the material facts and the action of the court. It is as follows:

"This suit involves a trade for an automobile truck alleged to have been made September 24, 1925. As originally filed the bill sought specific performance, but by an amendment it prayed the alternative relief of damages for breach. The defendant denies the authority of its agents to make the trade, or, rather, denies that a contract was ever consummated, because of the want of approval by any authorized agent.

The complainant was the owner of a second-hand Reo auto bus. He acquired it from the Byrd Motor Company of this city, in a trade for two lots somewhere in Florida, which had cost him $700. The Byrd Motor Company had purchased it at the sale in the bankruptcy proceeding of Tom Dalton's estate, who had operated it in the bus line business between Lafayette, Ga., and Chattanooga. In his deposition in this cause complainant says that the bus was worth between $800 and $1,000. However, he called as a witness, one D. P. Miller, an employee of the defendant, who is familiar with the values of used cars, and in response to a question of complainant's solicitor, Miller, stated that at the most the value was $350.

The defendant, The White Company, appears to be the name of the sales organization of the White Truck Company, which is engaged in the manufacture and sale of automobile trucks at Cleveland, Ohio and maintain branches for the purpose of sales in the various cities in the country. At the time of this transaction, the southeastern district branch was located in Atlanta, Ga., and said district branch maintained a sub-branch at Chattanooga, which was under its control. In this sub-branch at Chattanooga were a manager and a salesman. At the date of this transaction one E. P. Soule was the said manager.

On September 24, 1925, complainant Poe inquired of said Soule how much he would allow him for his said Reo bus in trade for one of the defendant's Model 15 trucks. Defendant's regular price for such a truck delivered at Chattanooga was $2339.50. Soule drove Poe's Reo bus around a block and then informed Poe that he would allow him $2,000 credit for it on the purchase of a truck. Miller testified that Soule was drunk on this occason and not in full possession of his mental faculties. Poe testifies that he did not notice any evidence of inebriety. It would seem that something serious must have been the matter with him because the value of the Reo bus was so disproportionate to the credit of $2,000 which Soule offered to allow that no sane and honest man, acting as agent for another, would have made such an order.

Poe and Soule, so far as Soule could, closed the transaction that same day. Poe signed in triplicate a printed form of order used

by the defendant in such cases, one copy of which was given to Poe and is exhibited by him with his bill. By reference to this exhibit it will be seen that it does not purport to be a contract in any sense but only what its name, appearing at the top of the paper, to-wit, "Customer's Order" implies. It is signed by Poe alone and is addressed to "The White Company, Cleveland, Ohio." It describes the kind of truck wanted and states the delivery price of $2339.50 and the allowance of $2,000, for the Reo bus, showing a balance of $339.50, for which a sixty days' note was to be dated and delivered on the delivery of the truck. The order contains this statement:

"This order is given subject to the approval of an officer of The White Company at Cleveland, Ohio."

Poe did not await the delivery of the truck to execute his sixty-day note for the balance of $339.50 referred to in the order. Instead, he gave his check for the immediate payment of the amount, and Soule directed Miller (against his judgment, as he says) to give Poe a receipt showing "payment in full" for the truck, which he did, and the same appears as Exhibit 4 to the bill. On the same day Poe delivered the Reo bus to Soule. A few days after this transaction Soule was relieved as manager of the sub-branch at Chattanooga and one J. H. Barrett was appointed in his stead. Soule left Chattanooga and later was discharged from defendant's employ. His deposition was not taken by either side and it does not appear that his whereabouts are known. Poe's check and Reo bus were retained at the Chattanooga branch until October 13, 1925, when Barrett returned the check to him in a letter stating that the defendant could not accept his order for the truck and notifying him to send and get the bus. This letter is Exhibit 3 to the bill.

The order signed by Poe above referred to was never approved by any officer of The White Company at Cleveland or by anybody else except Soule. Apparently with the view of showing that it was approved by the Atlanta branch, Poe relates a telephone conversation which Soule had with the Atlanta branch in his presence while the transaction was going on. But according to Poe's own version of the conversation, it related only to the question of how soon a truck of the kind desired by Poe could be delivered. Poe makes no pretense that Soule stated to the Atlanta branch the terms of the proposed trade or received any authority to make it.

Poe's principal insistence, however, is that no approval was necessary and that as shown by its course of dealing Soule had authority to bind the defendant. To establish this proposition he took the deposition of Miller, the witness before mentioned who is in the employ of defendant as accountant in the Chattanooga branch, and of one H. A. Sparks who was in its employ in 1922, when the James Supply Company conducted the branch here. To

disprove it defendant took the deposition of E. J. Speh, the manager of defendant's Home Office Sales Department at Cleveland. These witnesses differ slightly in their description of the details of procedure observed in the case of offers negotiated by a branch such as existed at Chattanooga, but they all agree that neither Soule nor any of his predecessors or successor in the Chattanooga branch nor the manager of any other branch of the defendant anywhere had authority to bind the defendant by a contract of sale, even for cash at the listed price, without approval from a higher authority and this was the practice followed. It may be said that this limitation in the extent to which it goes, is unusual, but Poe cannot complain because the very paper which he signed showed by the recital above quoted that his offer had to be approved by some one other than Soule.

It is true that after the business of the defendant increased the requirement that offers be approved by an officer was relaxed and offers could be approved by lesser representatives. Speh says that he or his assistant was the final authority upon this subject. Miller's deposition seems to indicate that offers could be approved by a regional vice-president. The question of exactly who must have approved seems to me to be immaterial in this case, because the offer in question was never approved by anybody. The argument for complainant seems to be that since approval by an officer was then no longer necessary, approval by Soule was sufficient. All the evidence shows that Soule had no such authority and in his offer Poe was put on notice that Soule had no such authority.

It appears from the deposition of Speh that during the year 1925 there were 21 sales made from the Chattanooga branch, in 8 cases of which deliveries were made before approval. This fact Speh explains as follows:

"Some orders from large users of the highest financial standing, such as the Standard Oil Company and others, might be filled by delivery of a truck before the order was received at Cleveland and approved, and although in these cases the branch manager would, technically, be exceeding his authority he would be willing to stake his standing with the company on the certainty that the order would be approved when received at Cleveland, and his action in delivering the truck ratified."

This is far from showing that Soule had implied or apparent authority to make this special contract, and as shown by the exhibit he did not pretend to.

Another ground upon which Poe relies is that his check and automobile were kept at the branch office until October 13, and that in the meantime the branch endeavored to sell his bus, specifying an attempt to sell it at Spring City, Tennessee, another at Lafayette, Georgia, and another at Jacksonville, Florida. This

statement as to the attempted sales is based by Poe upon statements to him by Soule and Barrett. But it does not appear that either Soule or Barrett had any more authority to bind defendant by attempting to sell the Reo bus than they had to bind it by contract for the sale of the truck.

Complainant's bill is without merit and will be dismissed with costs.

The decree followed as a matter of course, from which complainant appealed and assigned errors.

The contentions under the assignments are for the most part the same as shown in the memorandum of the Chancellor. However, the first and second assignments predicate error upon the action of the Chancellor, in refusing the complainant a decree when the case stood on a pro confesso and in setting aside the pro confesso. Setting aside a pro confesso is peculiarly within the discretion of the Chancellor and we see nothing in this case to justify the court in revising the exercise of that discretion. If a decree had been entered on the pro confesso, it could still have been set aside by the Chancellor, so the only question here seems to be whether the complainant was entitled to a decree for a specific performance upon the whole record.

Complainant insists that he is entitled to a specific performance under Sec. 68, Ch. 118 (p. 334), Acts of 1919. That section reads:

> "Where the seller has broken a contract to deliver specific or ascertained goods, a court having the powers of a court of equity, may if it thinks fit . . . direct that the contract shall be performed specifically without giving the seller the option of retaining the goods on payment of damages."

Complainant in order to claim a specific performance must prove a contract and a contract to deliver specific or ascertained goods, and then the court may decree specific performance or not as it sees fit. Even if the contract were proven, this case does not appeal to the discretion of a court on account of the valuation placed upon the bus by complainant. These assignments are overruled.

Aside from the contentions of the first two assignments, we find just two other contentions insisted on for complainant. First, that the agent of the defendant company did sometimes deliver trucks without waiting for the order to be approved by an officer at Cleveland or by any one. If an agent in some instances took the risk of violating orders, because he was sure ratification would follow, this cannot help the complainant. If Soule had delivered a truck to complainant at the time the order was signed and the check given, still his action would have had to be approved or ratified. Because the company sometimes ratifies a satisfactory order after delivery of the truck, which would have been approved before, it is not necessarily bound to approve before delivery an entirely unsatis-

factory order. Soule had no authority to close a contract without submitting the order for approval to some one authorized to act and there is nothing in the record to estop the defendant company to rely on their rule.

Second, that defendant is bound to recognize this as a completed contract, because it retained the bus and check for twenty-one days, and during that time Soule and Barrett made efforts to sell the bus. The fact that the check given by complainant for the cash payment was not cashed would indicate that the company did not consider the contract accepted or concluded. As to the attempt to sell the bus it may be that when Soule came to himself he realized that the only chance to get an approval of this order was to effect a sale of the bus at something like $2,000. This could have no effect to bind the company. Complainant argues that there should be a presumption of authority in Soule to conclude the contract without submitting to any one, from the failure of defendant to take his deposition. The rule does not apply here. Defendant proves want of authority in Soule by several witnesses. Complainant offers no proof of authority. Defendant was not bound to offer further proof and especially to call one who might be hostile from having been discharged by defendant for alleged delinquencies. There was more reason for complainant calling Soule as a witness.

All assignments of error are overruled and the decree of the lower court is affirmed. Appellant and surety on appeal bond will pay the costs of the appeal.

Owen and Senter, JJ., concur.