# MABEL C. ELLERMAN v. SKELLY OIL COMPANY AND OTHERS.[1]

October 8, 1948.

No. 34,540.

---

[1]Reported in 34 N. W. (2d) 251.

*Bundlie, Kelley, Finley & Maun* and *Mandt Torrison,* for appellant.
*Clifford W. Gardner,* for respondent.

LORING, CHIEF JUSTICE.

Action for personal injuries sustained as the result of an explosion which occurred on January 10, 1942, in a tourist cabin near Forest Lake and alleged to have been caused by the negligence of defendants.

The jury returned a verdict of $12,500 in favor of plaintiff. From an order denying its subsequent alternative motion for judgment or a new trial, defendant Skelly Oil Company appealed.

In its motion for a new trial and on appeal, appellant assigns as error the following: (1) The evidence does not sustain a finding of negligence; (2) the trial court erred (a) with reference to the admission and exclusion of evidence and in denying defendant's motion to reopen in order to present certain physical evidence in rebuttal; (b) in its instructions to the jury; (c) in denying defendant's motion for a new trial on the ground that the verdict was rendered under the influence of passion and prejudice; and (d) in refusing to instruct the jury, as requested by defendants, to disregard certain remarks made by counsel for plaintiff in his closing argument with reference to defendants' failure to produce a former employe.

The complaint alleged four specific acts of negligence on the part of defendants, all relating to the installation, maintenance, inspection, and servicing of certain gas tanks, heating equipment, pipes, and other equipment used in connection with heating and to provide cooking facilities in the cabin in which the explosion occurred. In particular, plaintiff relied upon the negligence of the Skelly company, on the morning of the explosion, in filling the storage tank on the described premises with the propane-butane fluid used for heating and cooking in the cabin.

Defendants Robert Roberts and Art Anderson were co-owners of Forlam Inn, near Forest Lake, and maintained and operated in con-

nection therewith six tourist cabins. Cabin No. 5, in which the explosion occurred, was leased to plaintiff and her husband, who occupied it the morning of the explosion. The Skelly company, some months prior to the explosion, had entered into an agreement with the owner of the inn and cabins to sell, install, inspect, maintain, and service certain heating and cooking appliances for the premises, including the cabins thereon. As part of its agreement, it was to keep a storage tank installed on the premises filled with propane-butane fluid to provide the necessary fuel for the heating and cooking equipment. This fluid consists of a mixture of 60 percent butane and 40 percent propane gas, which vaporizes quickly upon contact with air and which will explode when mixed with air in certain proportions. The vapors rising therefrom are not soluble in water and will not penetrate water or ice. They drift downward, and a spark or flame will ignite them, as they are highly inflammable. The tank in which this fluid was stored was some 25 feet west of cabin No. 5. A pilot light for the water heater in the basement was constantly burning in each cabin.

It is plaintiff's contention that on the morning of the explosion the Skelly company's employe, in filling the tank, permitted the fluid to spill over; and that from that point the vapors therefrom seeped through a sewer line with an opening near the tank into the basement of plaintiff's cabin, where such vapors were ignited by the pilot light, resulting in the explosion described. It is not disputed that the explosion occurred shortly after the employe mentioned had completed his task of filling the storage tank with the fluid.

The property upon which the cabins are located is low, swampy ground. In consequence, water continually seeped into and filled a standpipe above the storage tank. In an effort to remedy this situation, the Skelly company had attempted to drain the water away from the tank and for this purpose had installed a two-inch cast-iron pipe, which was to be connected with the sewer near cabin No. 6. An open pipe connecting with the sewer was left unconnected a few inches from the opening of the tank. It did not penetrate the hood or top of the tank from which it was intended to drain the water.

This open pipe was then covered over and sealed with dirt. The method of drainage thus attempted was not effective, as the stand-pipe above the storage tank still had to be bailed out daily thereafter.

On the morning of the explosion, plaintiff, her husband, and her son were seated around the kitchen table when they heard a rumble as of thunder, followed immediately by a blast from the basement. The door from the basement to the kitchen burst open, striking the back of the chair in which plaintiff's husband was seated. The force of the explosion shoved the table against plaintiff, pinning her to the cabin wall. Plaintiff at the time was pregnant, and she presented evidence that the impact above described resulted in a miscarriage.

Defendants submitted testimony to the effect that a standard gooseneck trap with a four-inch water seal therein was installed in the drain of each basement of these cabins, and that it would have been impossible for gas to seep through such water seal. In rebuttal, plaintiff submitted testimony to the effect that there was no such gooseneck trap in the basement of cabin No. 5. Defendants, after such rebuttal testimony, moved to reopen the case to submit in evidence the gooseneck trap taken from cabin No. 5, but the trial court denied their motion to reopen.

Plaintiff's husband testified that almost immediately following the explosion the Skelly company's truck driver told him: "He said he had just filled the tank and had overflowed it two or three gallons, evidently he said it came down this drain."

The truck driver, John Horbal, was not present at the trial. The testimony disclosed that he had been discharged by the Skelly company some four years prior thereto. In the course of the closing argument to the jury of plaintiff's counsel, the following proceedings took place:

"Mr. Gardner: * * * you are deprived of the testimony of one very important witness and that is the testimony of this truck driver. He isn't here, and the only explanation that is made here

is that he is discharged from the Skelly Oil Company some four months afterwards.

"Mr. Torrison: If the court please, I am going to object to this line of argument as being highly improper. This witness was discharged as an employee. He is available, he is just as available to the plaintiff as to us; the plaintiff has the burden of proof. There is no occasion to attempt to raise any inference that he would have testified in favor of the plaintiff any better than in favor of the defendant.

"The Court: Overruled.

"Mr. Gardner: * * * *There is no effort, ladies and gentlemen, to explain the reason here in this case for the absence of Mr. Horbal; no justification and explanation of his absence at all in this case; the one man that should have been produced, who could have given you more help than anybody else in arriving at the right result so in your discretion you may infer that if Horbal was called in this case he would testify to what he told Ellerman, that he spilt this stuff and if he told Ellerman he spilled two or three gallons of this stuff, who knows how much he did spill of it.* If his first explanation was he spilled two or three gallons of it, maybe more. He hadn't hauled to the Forlam Inn, I haven't a present recollection as to whether he was there or not before, but in any event if he told this strange man he spilled two or three gallons why he should have been here. Nobody is more disappointed in his failure to be here than I am.

"Mr. Torrison: I want to be sure I reserve the objection to this line of argument properly. This witness is just as available to plaintiff as to the defendant. He is not an employee of the defendant or under our control and the plaintiff has the burden of proof in this case. Counsel is now arguing that the inference to be drawn from the absence of this witness, whom he should have produced as well as anybody else, that that witness would have testified more than anything in the evidence appears.

"The Court: Overruled.

"Mr. Gardner: Well, we go on. Apparently we are in a position where counsel feels that that argument in the absence of Horbal is a very touchy spot." (Italics supplied.)

Plaintiff testified that as a result of the explosion she was singed about the face and eyebrows, and evidence was presented that she sustained shock or fright as a result thereof. Approximately six weeks thereafter she consulted Dr. Joseph A. Poirier, a practicing physician at Forest Lake. He testified that a few days after this consultation she suffered a miscarriage, and he expressed the opinion that it was the result of fright or shock caused by the explosion. He also treated her for nervousness and anemia. Plaintiff's action was not commenced until March 4, 1946, some four years after the accident. The jury's verdict was for $12,500, and appellant alleges that this was so excessive as to indicate the presence of passion and prejudice.

■ A careful examination of the record convinces us that the trial court erred in denying defendants' request to instruct the jury to disregard the argument of plaintiff's counsel and his statements therein to the effect that the failure of defendants to produce the witness Horbal created a presumption that his testimony, had he been present, would have been unfavorable to defendants. Defendants strenuously objected to the argument of plaintiff's counsel on this question, and contend that it was highly prejudicial and created in the jurors' minds the prejudice which accounted for their verdict in plaintiff's favor.

The law is well settled that where an employe who could give important testimony relative to issues in litigation is not present and his absence is unaccounted for by his employer, who is a party to the action, the presumption arises that the testimony of such employe would be unfavorable to his employer. Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341; Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533; Schultz v. Swift & Co. 210 Minn. 533, 299 N. W. 7.

■ This rule, however, has no application where such a witness is no longer in the employ of the party to the litigation. When the

evidence discloses such to be the fact and the burden of proof is upon the plaintiff, no obligation rests upon a defendant employer to present his former employe as a witness. Here, plaintiff did not produce the witness nor explain his absence. Her failure in this respect certainly could not be said to have created a presumption that the testimony of the absent witness would have been unfavorable to the Skelly company. See, Kaplan v. Interborough Rapid Transit Co. 165 N. Y. S. 216; Naughton Co. v. American Horse Exchange, 49 Misc. 227, 97 N. Y. S. 387; Mutual Benefit H. & A. Assn. v. Bradford, 242 Ala. 431, 7 So. (2d) 20; Reynolds v. International & G. N. Ry. Co. 38 Tex. Civ. App. 273, 85 S. W. 323; Industrial Mut. Ind. Co. v. Perkins, 81 Ark. 87, 98 S. W. 709; Tuthill v. Belt Ry. Co. 145 Ill. App. 50; Gulf, M. & O. R. Co. v. Joiner, 201 Miss. 442, 29 So. (2d) 255; Sauer v. Union Oil Co. 43 La. Ann. 699, 9 So. 566; Poe v. The White Co. 7 Tenn. App. 652; Ward v. Saint Vincent's Hospital, 65 App. Div. 64, 72 N. Y. S. 587.

As stated in the Naughton case, which involved the same point (49 Misc. 229, 97 N. Y. S. 388):

"* * * The whole matter could, probably, be cleared up by calling Flack as a witness, and there is nothing to show that he cannot be produced. No greater obligation rests upon the defendant to produce him than rests upon plaintiff, if, indeed, there is as much. It appears that he is not now in defendant's employ, or under its control and direction; and, therefore, no presumption unfavorable to defendant is to be attributed to its failure to call him, * * *."

In the Industrial Mut. Ind. Co. case, in reversing the verdict for plaintiff, the supreme court of Arkansas stated the rule as follows (81 Ark. 91, 98 S. W. 710):

"* * * But the court erred in permitting counsel for the appellee in his argument 'to call attention to the fact that the defendant (appellant) had not produced Nicholson and to insist that its failure to produce him would warrant the jury, under the circumstances, in drawing an unfavorable inference against the defendant (appellant) * * *,' and erred in refusing to instruct that no presumption un-

favorable to appellant could be indulged on account of the absence of Nicholson. The uncontradicted proof showed that Nicholson was not in the employ of appellant at the time of the trial, and that appellant knew nothing of his whereabouts. The witness under such circumstances is as accessible to one party as the other."

Minnesota decisions are not to the contrary. While this court has not had occasion to pass directly upon the question where a former employe has been discharged, it has indicated that the rule creating the presumption arising from the failure of an employer to produce an employe as a witness is limited to the cases where such witness is actually in the employment and under the control of the party at the time of trial. See, Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341; Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533; and Schultz v. Swift & Co. 210 Minn. 533, 299 N. W. 7.

In the light of this well-established rule, we feel that it was prejudicial here to permit counsel for plaintiff, over objection, to argue that the failure of defendants to produce Horbal as a witness created the presumption that his testimony would have been unfavorable to defendants; and that, had he been produced, he would have testified to even greater acts of negligence than he was said to have admitted to plaintiff's husband. Defendants' objections to this line of argument were clearly presented, and their request that the jury be instructed to disregard such remarks was timely and direct. Under such circumstances, we feel that the trial court's failure to properly instruct the jury on this question constituted prejudicial error which may have been one of the motivating factors in the verdict returned by the jury.

It is suggested that a comment by counsel for defendant, in his argument to the jury, to the effect that the employe Horbal had been discharged some four to six months after the accident, invited the subsequent improper comments of plaintiff's counsel above referred to and nullified any error in connection therewith. The reference of defendant's counsel was to evidence properly admitted and hence was not erroneous but well within the rules of practice and pro-

cedure. It did not justify plaintiff's counsel in submitting subsequently an erroneous rule of law to the jury or the court's acquiescence in connection therewith.

■ There are many additional assignments of error, particularly with reference to the admission and exclusion of evidence and the refusal of the right to reopen. Consideration of many of such questions may be eliminated at a new trial, at which the parties will have ample opportunity to present proper and admissible evidence and to procure the attendance of the necessary and essential witnesses in connection with this litigation. Because of our conclusion that the order appealed from must be reversed on other grounds, and because, in all likelihood, on a new trial there will be presented new witnesses and evidence not available at the former trial, thereby eliminating many of the issues covered by the assignments of error on this appeal, we deem it would serve no useful purpose to consider in detail all such numerous remaining assignments at this time.

Our conclusion is that the failure of the trial court to properly instruct the jury in connection with statements of counsel for plaintiff bearing upon the absence of the witness Horbal constituted prejudicial error requiring a new trial.

Reversed and new trial granted.

PETERSON, JUSTICE (dissenting).

This is simply a case of invited error of which defendants cannot complain. Failure to produce Skelly's driver as a witness, if not an issue in the case, should not have been commented on by either counsel. If the matter was not a proper one for argument for one side, it also was not for the other. Defendants' counsel, who argued first, introduced the question by the following remarks:

"* * * The driver isn't an employee of Skelly Oil Company. He was discharged four to six months later after the accident, long before any claim was made in this case. I don't want you to assume it was because of anything connected with this accident because there hasn't been any claim made here to the Skelly Oil Company until last year. He was discharged in the summer of 1942."

The argument of plaintiff's counsel was provoked by that of defendants' counsel quoted above and was in answer to it. That being true, defendants cannot complain. Improper argument by plaintiff's counsel invited or provoked by improper remarks of defendants' counsel is not ground for reversal. Hinman v. Gould, 205 Minn. 377, 286 N. W. 364; 39 Am. Jur., New Trial, § 61.

The fact that the only question discussed in the dissent is the right of defendants to complain of the argument of plaintiff's counsel is not to be taken as implied approval of the views expressed by the majority. As to those matters, expression of opinion is expressly reserved.

We should affirm.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.

