UNITED STATES HOFFMAN MA-
CHINERY CORPORATION,
Plaintiff,

v.

VALETERIA CLEANERS, Inc.,
Defendant.

Civ. No. 5056.

United States District Court
D. Minnesota, Fourth Division.
Aug. 14, 1956.

Sidney J. Kaplan, Kaplan, Edelman & Kaplan, Minneapolis, Minn., for plaintiff.

George N. Guttmann, Minneapolis, Minn., for defendant.

DEVITT, District Judge.

Plaintiff, a Delaware corporation, seeks to recover the price of certain goods sold and delivered to defendant, a Minnesota corporation, pursuant to a contract. The matter in controversy exceeds $3,000, exclusive of interest and costs. Defendant has raised certain defenses based upon plaintiff's alleged failure to comply with the terms of the contract and an alleged violation of the Clayton Anti-Trust Act. Defendant has also counterclaimed, seeking rescission and restitution alleging fraudulent misrepresentation by plaintiff. The case was tried by the Court without a jury.

On May 9, 1952 the parties entered into a written contract wherein plaintiff Hoffman agreed to deliver to defendant Valeteria 100 dry cleaning cabinets at $1,500 per cabinet.[1] In accordance with the terms of a rider attached to the contract, five cabinets were delivered in December, 1952 for which defendant paid $7,500. In June, 1953 a second lot of five cabinets was delivered to defendant, but no payment therefor has been made or tendered. Plaintiff's action is for $7,500, the contract price of the second lot of five cabinets. Further, at various times throughout the year 1953, at defendant's order, various items incidental to the operation of the dry cleaning cabinets were delivered by plaintiff for which no payment has been received. The uncontested value of these items is $802.90. Delivery of these items and non-payment is admitted by defendant.

As its first defense, defendant contends, that by the terms of the contract, plaintiff assumed the obligation of installing the cabinets in suitable locations of public access, that plaintiff has failed to completely install the five cabinets which are the subject of plaintiff's action, and that payment for these cabinets was due only within a period of ninety days after installation.

The contract provides in paragraph (3), in so far as applicable to this defense, that:

"Hoffman agrees to give reasonable assistance to the Operator in finding suitable locations for said equipment * * *"

and in the rider attached:

"* * * payment of $7500.00 to be made within ninety days (90) after installation of said five cabinets. This sequence of shipping and payments to be followed, and Valeteria Cleaners, Inc., agrees to accept delivery and install a minimum of ten (10) or more cabinets per year, if conditions are favorable and locations available."

There is evidence that plaintiff Hoffman did furnish some assistance to defendants in finding suitable locations for the cabinets. Although the plaintiff

1. The cabinets were storage receptacles to be placed in public or semi-public places and intended as self-service depositories for clothing needing cleaning. An agent of the dry cleaner would pick up the soiled garments, cause them to be cleaned, and then return them to the cabinet to be claimed by the customer. Payment was made by depositing the necessary coins in a slot for that purpose.

did assume the burden of furnishing reasonable assistance, these contract provisions cannot be construed to place the primary burden of installation upon plaintiff. Reading the contract as a whole, I am led to the conclusion that installation was, in fact, to be left primarily to the defendant with reasonable assistance from plaintiff.

██ Furthermore, it appears that two of the five cabinets unpaid for were actually installed at least by December 10, 1953, and that locations were available for the other three cabinets. Two of the cabinets were installed about 13 months before this action was commenced, and as to the remaining three uninstalled cabinets, it seems to me that defendant is attempting to rely on a tortured (and erroneous) construction of the contract to avoid liability. So long as locations were available for installation, the defendant cannot retain possession of the cabinets and, at the same time, deny liability therefor. Ninety days has long since elapsed since the installation of the first two cabinets and far more than a reasonable time has elapsed for the installation of and payment for the remaining three cabinets. Defendant is liable for the price of these five cabinets and the incidental items purchased, unless some other defense precludes liability.

As its second defense, defendant contends that the contract is void as a violation of section 3 of the Clayton Anti-Trust Act, 15 U.S.C.A. § 14.

Paragraph 12(h) of the contract reads:
"Non-Competition. The Operator, during the term of this agreement and for a period of ——— thereafter, will not directly or indirectly engage or be interested within the following area: ——— in the self-service vending of dry-cleaning, laundry, shoe repairing or other services, other than with operating equipment supplied by Hoffman."

Defendant contends that paragraph 12(h) constitutes a tying clause tending to restrain competition and that therefore the contract is a violation of Section 3

of the Clayton Act, 15 U.S.C.A. § 14. In view of the unfilled blanks in paragraph 12(h) I have some doubt whether the parties ever intended this clause to be operative.

██ However, the plaintiff's cause of action in no way depends upon the enforcement of this clause. Assuming, arguendo, that paragraph 12(h) is an illegal restraint of competition, the remaining portions of the contract upon which plaintiff relies are valid; the Court has not been asked to give effect to a provision which contravenes national policy. Under these circumstances, the contract may be enforced. Nye v. Chase National Bank, 8 Cir., 34 F.2d 435, 436, 17 C.J.S., Contracts, § 276.

"The rule is that a lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration." 17 C.J.S., Contracts, § 289, p. 675 and cases cited.

Defendant's argument based on the Clayton Act is without merit.

Defendant has counterclaimed alleging that as an inducement to him to enter into the contract, plaintiff represented that the cabinets were each designed to handle at least $500 worth of business per week, and that other cabinets sold by plaintiff and operated in Cleveland, Ohio were handling from $250 to $500 per week, that such representations were false in that the cabinets could not handle more than $75 worth of business per week, and that the representations were made with the intent to deceive and defraud defendant. Furthermore, it is contended that plaintiff fraudulently agreed to bear the burden and cost of promotion and advertising and that plaintiff failed to do so, and that defendant paid out $4,000 for promotion and advertising. Defendant alleges reliance upon these representations and seeks rescission of the contract and judgment in the amount of $11,500 representing the price paid for the first five cabinets ordered plus the $4,000 outlay for promotion and advertising ex-

pended in alleged reliance upon plaintiff's promise to bear these costs.

■ To sustain an action for fraud, it must appear that there has been a knowingly false representation of a material fact susceptible of knowledge, or that such representation was made without knowledge of its truth or falsity, with intent to induce reliance, and a reliance thereon with pecuniary damage resulting from the deceit. Wann v. Northwestern Trust Co., 120 Minn. 493, 498, 139 N.W. 1061; Spiess v. Brandt, 230 Minn. 246, 41 N.W.2d 561, 27 A.L.R.2d 1.

■ To justify setting a contract aside, the party who asserts fraud must substantiate his claim by a fair preponderance of the evidence and the representations, to be actionable, must have been made and calculated to deceive not the average man, but a person of the capacity and experience of the recipient of the representations, Spiess v. Brandt, supra.

The only testimony offered in support of defendant's counterclaim is that furnished by Hellman, an officer of Valeteria. Hellman testified that the representations were made at either one or both of two conferences held between the parties at which were present Hellman and Campfield, another officer of Valeteria, and several representatives of Hoffman, including one Mejia, who testified on behalf of plaintiff Hoffman.

Hellman's testimony was to the effect that representations were made that the dry cleaning cabinets already in operation elsewhere were operated very successfully. From this, the implication is urged that the cabinets were represented as doing between $250 and $500 worth of business per week. Defendant's contention that this representation was false is supported only by records of Valeteria indicating that the average weekly intake of Valeteria's cabinets was something far less than $250. This testimony, standing alone, if believed, could conceivably support a cause of action for rescission on the grounds of fraud because plaintiffs have admitted that they now have no knowledge of the amount of business those cabinets actually handled.

■ However, Hellman's testimony, weak as it is, stands alone; the witness Mejia denied that the statements were made. Furthermore, Hellman, on cross-examination, displayed considerable confusion and lack of recall as to who were present at the two conferences and what was said there. It appeared that Mr. Campfield, president of Valeteria, was present in at least one of these conferences. Hellman was unsure of Campfield's presence at the other conference, but Campfield was present in the courtroom at the time of trial. Assuming Hellman's confusion to be upon only minor matters, and assuming that Hellman correctly testified as to the making of the representations, Campfield's testimony would have been of invaluable aid in clearing up the discrepancies in Hellman's testimony, and possibly could have corroborated what Hellman declared. Yet, Campfield was not called as a witness. The defendant's failure to call Campfield as a witness justifies the inference that the testimony of Campfield would be unfavorable to defendant. Ellerman v. Skelly Oil Co., 227 Minn. 65, 70, 74 N.W. 2d 251, 254, 5 A.L.R.2d 886; Interstate Circuit v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610; see 5 A.L.R. 2d 886, 907 and cases cited.

Add to these circumstances the inability of Hellman to recall whether he was the secretary or the treasurer of Valeteria Cleaners, Inc., whether there were any other directors of Valeteria and whether or not Valeteria maintained separate books of account, and we are led to the conclusion that the testimony of this witness is entitled to little, if any, credence in support of defendant's allegations of fraud.

The testimony of Hellman in support of defendant's claim of the expenditure of $4,000 in promotion and advertising expense is at best vague and inconclusive. The witness was able to recall only the imprecise sum of $800 or $900 spent for promotion and advertising and was unable to recall when this disbursement was

made. No other witness testified. No books or records were offered. The probative value of Hellman's testimony is seriously weakened by his demonstrated inability to recall other facts which should have been well within his knowledge.

The evidence is insufficient to support defendant's counterclaim.

Findings of Fact, Conclusions of Law, Order for Judgment and form of Judgment, in accordance with the above views, may be prepared and submitted on 10 days notice.