## FRANK HAHN v. AETNA FINANCE COMPANY AND ANOTHER.

87 N. W. (2d) 588.

January 17, 1958—No. 37,287.

*Mahoney & Mahoney* and *Geoffrey J. Mahoney,* for appellant.
*Douglass, Sheets & Bell* and *James R. Bell,* for respondent.

KNUTSON, JUSTICE.

This action was commenced by plaintiff to recover damages for injuries sustained in a collision between a truck driven by plaintiff and an automobile owned and driven by defendant Charles E. Wilkens. As far as this appeal is concerned, it is conceded that Wilkens was negligent and no attack is made on the judgment against him.

Wilkens was employed by defendant Aetna Finance Company as an investigator. Aetna Finance Company is engaged in a small loan business. Wilkens' duties involved the investigation of those who borrowed from Aetna. On the day of the accident he left his home and drove his wife to southeast Minneapolis where she was employed. He then started for south Minneapolis to call on a customer of Aetna by the name of Jensen. The collision occurred en route to the Jensen home. Aetna claims that Wilkens was not acting within the scope of his employment at the time of the accident. He was driving his own car so that liability of Aetna, if any, must rest upon the doctrine of respondeat superior.

The evidence shows that investigators usually were assigned the

accounts they were to call on each day by the assistant manager of Aetna. Aetna proceeds on the theory that the evidence conclusively establishes that Wilkens was not acting within the scope of his employment at the time of the accident for the reason that, in conducting its business, Aetna followed an ironclad routine practice of assigning each account to the investigator on the day he was authorized to call on the customer. Aetna claims that, inasmuch as the evidence shows that the Jensen account was not assigned to Wilkens on the morning involved, it follows that he was not acting within the scope of his employment. The trouble with Aetna's argument is that the evidence does not show conclusively that it always adhered to this routine practice. The assignment of accounts was handled by the assistant manager of Aetna. Eugene M. Burch, who was assistant manager at the time of the accident but who has since left the employment of Aetna, testified that *usually* the accounts were assigned each day but that the investigators had some discretion in calling on the debtor "when he would be able to catch that person." The Jensen account had been given to Wilkens 20 or 30 times. It was an "Extremely slow" account, according to Burch. The nature of the work done by Wilkens was aptly described by the manager of Aetna as "chasing" accounts. A reading of Burch's testimony would permit the jury to find that investigators had some discretion in calling on borrowers at times other than when specifically assigned that duty. Added to that is the testimony of Wilkens. Significant of his testimony is the following:

"Q. When did you receive this assignment to see Walter Jensen?

"A. I didn't receive any particular assignment. My work consists of any delinquent accounts in the delinquent box. Any of those accounts if I was in the neighborhood at any time I would stop by and see them.

\* \* \* \* \*

"Q. What hours do you work or did you work at that time?

"A. That is another good question. My hours are no set hours. If necessary I would be working at three o'clock in the morning, so I couldn't say.

"Q. You worked when it was necessary?

"A. Yes, I worked when it was necessary to keep my particular job in line which was delinquents."

There seems to be no dispute that Wilkens was actually on his way to see Jensen at the time of the accident. He had no other purpose in calling on Jensen except to further his master's business. On the issue of whether Wilkens was engaged in the scope of his employment at the time of the accident, the evidence presents a question of fact for the jury's determination. There seems to be no dispute in the applicable law, and we could serve no purpose in discussing it here.

■ At the close of the court's instructions, counsel for Aetna requested the court to instruct the jury "that the defendant, Aetna, had no duty to produce Wilkens for the trial and that they should not infer anything from his not being there." Aetna now assigns as error the court's refusal to do so, relying upon our decision in Ellerman v. Skelly Oil Co. 227 Minn. 65, 34 N. W. (2d) 251, 5 A. L. R. (2d) 886. The record shows that a subpoena issued at the request of plaintiff for the appearance of Wilkens was returned "not found" and that thereafter a pretrial deposition of Wilkens was read, partly by plaintiff and partly by defendant.

The Ellerman case clearly is distinguishable from the one now before us. In that case, over the strenuous objection of defendants, plaintiff's counsel was permitted to argue to the jury that defendants should have produced a former employee. We held that it was prejudicial error to permit plaintiff's counsel, over objection, to argue that the failure of defendants to produce the witness created a presumption that his testimony would have been unfavorable to defendants, if he had appeared, and that, at the request of defendants, the court should have instructed the jury to disregard such remarks. Arguments of counsel in the case now before us are not in the record, and it does not appear that counsel for plaintiff argued to the jury that any inference or presumption should be drawn from the fact that Aetna had not produced Wilkens. As far as we can see, there is no claim in the briefs of counsel that plaintiff indulged in any improper argument as in the Ellerman case. Where a former employee no longer is employed at the time of the trial, failure to produce him raises no presumption against the former employer. Either party then has the same

opportunity and duty of calling him if his testimony is deemed important. Under these circumstances, it would not be proper to instruct the jury as Aetna requested. Aetna argues:

"* * * The jury was permitted to find that defendant should have produced Wilkens and that omission permitted an inference unfavorable to defendant."

The record does not support that assertion.

■ Finally, Aetna contends that it was error to refuse to explain to the jury what the legal effect of the verdict submitted would be. Aetna concedes that ordinarily the court is not bound to instruct the jury as to the legal effect of verdicts[1] but contends:

"* * * where, as here, such an instruction is necessary and appropriate to present the theories and claims of the parties and to prevent the jury from holding one defendant liable solely upon the ground that he may have some sort of legal recourse against a codefendant, an instruction should have been given explaining the theories and claims of the parties and the effect of the verdict."

The court adequately instructed the jury as to the necessary proof to establish liability against each of the defendants. It was not error to refuse to instruct as to the consequences which would flow from a finding on the part of the jury that either or both were liable to plaintiff. At best, it would have been a discretionary matter with the trial court whether it should explain to the jury the legal consequences of the verdicts it arrived at.[2]

■ The other assignments of error require no discussion. The appeal presents largely a question of fact decided on the conflicting evidence. We previously have indicated the futility of an appeal on such an issue. We do so again now. We find no reversible error.

Affirmed.

---

[1]See, 88 C. J. S., Trials, § 322.

[2]Keller v. Strasburger, 23 Hun (N. Y.) 625, affirmed, 90 N. Y. 379.