EARL W. WHITEHEAD v. WISCONSIN CENTRAL RAILWAY COMPANY.[1]

December 13, 1907.

Nos. 15,492—(144).

**Master and Servant—Defective Telltale—Verdict.**
While operating as a brakeman respondent was knocked off the top of a freight car by a low overhead bridge, and claims appellant was guilty of negligence in maintaining a defective type of telltale and in failing to exercise a proper supervision to keep the same in order. *Held:*
1. That the case was submitted to the jury upon proper instructions, and that the jury were justified by the evidence in finding appellant guilty of negligence as charged and that respondent was not guilty of contributory negligence, and did not, in this instance, assume the risk of his occupation, though he was familiar with the locality and voluntarily changed the customary method of inspecting the train.
2. The opinion of a witness as to the safety and reliability of telltales in use by appellant, as compared with those of other railway lines, was irrelevant and incompetent, for the reason that the jury were entitled to make their own deductions from the evidence as bearing upon the question whether appellant was negligent in maintaining the particular type of telltale involved in this action.
3. The verdict of $35,000 was not so excessive as to indicate that the jury were actuated by passion and prejudice, and the sum of $30,000, as reduced by the trial court, does not, under all the circumstances, conclusively appear to be more than just compensation for the injuries sustained.

Action in the district court for Ramsey county to recover $50,000 damages for personal injuries. The case was tried before Olin B. Lewis, J., and a jury which rendered a verdict in favor of plaintiff in the sum of $35,000. From an order denying its motion for judgment notwithstanding the verdict and denying its motion for a new trial if plaintiff consented to a reduction of the verdict to $30,000, defendant appealed. Affirmed.

*Thomas H. Gill, Walter D. Corrigan,* and *Walter L. Chapin,* for appellant.

*Humphrey Barton* and *John H. Kay,* for respondent.

[1] Reported in 114 N. W. 254, 467.

LEWIS, J.

Respondent was the head brakeman upon a freight train operating through Chippewa Falls, Wisconsin, and this action is based upon the claim that he was struck by a low overhead bridge and knocked off the top of the car on which he was standing, and that appellant was negligent in failing to maintain a proper telltale and in failing to keep the same in proper condition. Respondent recovered a verdict, and this appeal was taken from an order denying appellant's motion for judgment notwithstanding the verdict or for a new trial.

1. While the evidence was somewhat conflicting upon many points, the question of appellant's negligence with respect to the telltale in question was sufficient to go to the jury. Although respondent pleaded the Wisconsin statute with respect to telltales, and alleged failure on the part of appellant to comply therewith, the case was tried upon the theory that the statute had no application. This telltale had been constructed prior to the time the law went into effect, and it was not made to appear at the trial that the railroad commissioner had ever, as provided by the act, taken steps to enforce the same, or whether at the time of the accident appellant claimed to be maintaining the telltale in question under the provisions of that act.

Appellant's negligence was based upon the ground that, without regard to the requirements of the statute, it had constructed a telltale at a point about one hundred sixty feet east of the bridge, and that it was constructed in such careless and negligent manner that upon this occasion it failed to give the warning which it was intended to give. The cross-beam, from which the ropes were suspended, was covered by a platform about thirty inches wide. Witnesses testified that they had examined the telltale about two or three hours prior to the time of the accident, and that five or six of the strings had lodged on the platform, leaving a space in the center of about thirty inches. It was claimed by respondent that, if appellant had used a rod or beam simply, the ropes would have been far less likely to lodge when thrown up by the action of the wind or the exhaust of passing engines; that by constructing a platform only thirty inches wide appellant had enhanced, instead of reduced, the chances of the ropes adjusting themselves after becoming disarranged in the manner stated; and that the only reasonably safe way, if any platform at all was constructed,

was to make it wide enough so that the ropes or strings could not catch. As bearing upon the question of the negligence of appellant in this particular, evidence was received of the custom of other railroads, and the whole subject of telltales was gone into by both parties. The type of telltale above described was in general use by appellant, but not by other railroads. The statute did not prescribe that form of construction, and the mere fact that appellant had generally adopted it was not conclusive evidence that it was a safe appliance. Whether ordinary care had been exercised in erecting such an appliance was a question of fact, and the evidence was sufficient to take the question to the jury.

Appellant was also charged with negligence in failing to exercise reasonable supervision over the telltale as constructed. Upon this question it was shown that in the morning of the day preceding the accident employees in charge of that line of work inspected the telltale, and at that time it was found in proper order. On the other hand, it was shown that numerous engines passed under the bridge every day, and that it was not unusual for the ropes on that kind of telltales to become disarranged by the puffing of the engines, and it was claimed that the inspection, as conducted by appellant, was entirely inadequate under the circumstances. If the ropes were more likely to become lodged by reason of the platform, then more vigilance was required to keep them in order, and whether proper care was exercised was a question of fact.

2. Does it conclusively appear, as a matter of law, that respondent was guilty of contributory negligence, or that he assumed the risks of his occupation? It was shown that he had been in appellant's employ for about two years; that he had passed under the bridge in question at least one hundred times; that he was thoroughly familiar with the location; that in the usual course of his duties as brakeman, when the train approached Chippewa river, he was required to get off the engine, inspect the bottom of the cars constituting the train, as the same slowly passed him, and then get on the caboose when it reached him, and go forward to his post of duty toward the front of the train.

The rules of the company required the trainmen to inspect the cars at that point before crossing the river bridge, and respondent always

performed that duty. On this occasion, however, when the train slowed up as it approached the river, and as respondent was about to step off the engine for the purpose of making the inspection, another brakeman, in charge of another train, sidetracked in that locality, offered to perform that duty for him, whereupon respondent went back into the engine and out on the top of the train for a distance of ten or twelve cars, received the signal from the brakeman, who had then completed the inspection, that everything was all right, and gave the signal to the engineer to go ahead; that respondent then turned to receive the signals of the conductor, who was at the rear of the train; that he could not see the conductor because of the darkness, but saw the signals of his lantern, and understood that six cars were to be cut off; that he answered the signals, and had about completed the same when he was struck by the bridge, became dazed, rolled off to the right side of the track, where there was an embankment; and that he had no recollection of what occurred, except that he remembered struggling to keep himself from being run over. According to the custom of the train crew in question, at the time the head brakeman was engaged in inspecting the train as it passed him, the rear brakeman went upon the top of the train from the caboose and took the head brakeman's place at the head of the train for the purpose of receiving and giving signals. The conductor testified that he discovered respondent was not engaged in his usual duty of inspecting the train, but was on top of the cars; that he so told the rear brakeman, who was standing near him, and proceeded to give his signals to respondent.

Appellant argues that respondent was guilty of contributory negligence in remaining on top of the train, contrary to his usual custom, and that, if he received injuries while there, he voluntarily assumed the risks, or was guilty of contributory negligence, and that appellant was not responsible for his conduct. There was no imperative rule of the company which required respondent to get off the engine and get on the train again at the rear. The crew had established that practice for their own convenience, and presumably under the orders of the conductor. Although on this occasion respondent did not, in the first instance, receive any order from the conductor to change the usual method of inspection, yet, when he found that respondent had taken the responsibility of remaining at the head of the train for the

purpose of receiving and giving signals, the conductor accepted the situation and gave him the customary signals as to the division of the train.    While it may be true that, had respondent followed the usual custom, he might have escaped injury, the variation in the method of inspection did not establish contributory negligence or assumption of the risk on his part as a matter of law.

It is asserted that because respondent had been under this bridge a great many times and knew that it was attended with danger, and because he had usually stooped or sat down on the car in order to avoid being hit by the telltales when approaching the bridge, that he assumed the risks of working on top of the cars in that vicinity; that it conclusively appears from the evidence that he thoroughly understood the situation, was fully warned of the presence of danger, and must have appreciated the risk.    True, respondent testified that he had customarily avoided being struck by the telltales by stooping or sitting down, and that he was familiar with the locality; yet he stated that on this occasion, being absorbed in the duty of signaling, he must have momentarily forgotten that he was so near the bridge, and that in any event he had in mind the fact that he would be warned by the telltales, and hence was off his guard.    The evidence was for the jury.    It cannot be held as a matter of law, that he assumed the risks simply because he knew that the place of danger was close at hand.    The telltale was placed in position for the very purpose of warning trainmen of the approaching danger, should they happen to forget it while absorbed in their work.

3. Appellant insists that it conclusively appears from the evidence that respondent must have met with the accident in some other way than as claimed by him.    This argument is based principally upon two propositions:   (1) That respondent could not have been struck by the east side of the bridge in the manner claimed, for the reason that, when his height and the height of the cars and the bridge are considered, it was impossible for him to have been struck on the shoulders, as he claimed.    (2) If he had been struck by the east side of the bridge, he could not have been carried to the point where he was picked up, fifty six feet farther west.    We have examined the evidence in detail—the various measurements as given by the witnesses—and discover nothing improbable in respondent's statement.    That

he would have been struck by the bridge, unless in a sitting or stooping position, is admitted. Whether he would have been hit on the head or shoulders would depend upon the height of the car on which he was riding and whether he was standing in an erect or stooping position. An incident of that character cannot be figured out with mathematical precision. That he fell from the train at or about the bridge is conceded. He was knocked off in the manner stated by himself, or fell off in some manner unexplained. The fact that he was picked up on the right-hand side of the track at a point fifty six feet from the east side of the bridge, and that the track curved slightly to the left at that point, does not establish the fact beyond controversy that he fell by reason of his own carelessness, or by reason of something which occurred after he passed the bridge. If the train was going at the rate of five or six miles an hour, only a few seconds were required for it to pass over that distance, and if, as is claimed by respondent, he was stunned by contact with the bridge, and commenced to roll from the top of the car, it is not unreasonable to suppose that the train had gone that far before he fell to the ground.

4. During the argument to the jury, at the close of the evidence, counsel for respondent remarked that there was evidence tending to show that respondent was struck on the shoulders. The statement was challenged by counsel for appellant on the ground that it was not supported by the evidence. Respondent's counsel further insisted, at some length, that, if it were not true, it would have been easy for appellant to have proven the contrary by the physician in attendance immediately after the injury. The court admonished respondent's counsel to proceed with his argument, and not to refer again to what appellant had produced as evidence. This conduct is cited as prejudicial; but it is only necessary to say that there was some evidence in the case tending to show that respondent was struck on the shoulders, and, the statement having been challenged by counsel of the opposite party, it was fairly within the range of argument to call attention to the fact that appellant was in possession of the facts and failed to prove the contrary. However, there was no occasion to dwell at length upon the subject, and the court very properly admonished counsel to that effect. In our judgment, the jury were not prejudiced by what occurred.

5. A witness was called as an expert by appellant, and stated that he had examined the telltales in use by appellant and had made report thereon to the company, which report dealt with the condition, form, and manner of construction of its telltales, and was then asked the following question: "What is your opinion, from that examination and your other knowledge of the form, manner of construction, and maintenance of telltales on the Wisconsin Central Railway Company's line, as to their practicability, safety, and reliability, as compared with other telltales in common use throughout the northwest, including the state of Wisconsin?" The court sustained an objection to the question upon the ground that it was immaterial, irrelevant, and incompetent, and no foundation laid. As bearing upon the question whether appellant was negligent in constructing and maintaining the telltale involved in this case, it was competent for the witness to testify as to what type of telltales were in general use by appellant and other companies; but the question propounded called upon the witness to give his opinion as to the relative merits of the telltales in use by appellant and those in use by other companies throughout Wisconsin. The court and jury were entitled to make their own deductions from the evidence, and the opinion of the witness on that subject was irrelevant and improper.

6. The errors assigned to portions of the charge are not well taken. Every phase of the case was fully covered. The assignments are based mainly on the proposition that appellant was entitled to judgment notwithstanding the verdict, and that feature of the case has already been considered.

7. Respondent was a man twenty seven years old, and as the result of the accident his right leg was amputated three inches above the ankle, and his left leg three or four inches above the knee, and he is consequently incapacitated for all kinds of manual labor. The jury returned a verdict for $35,000, which the trial court reduced to $30,-000. Damages are not to be predicated alone upon the amount which respondent could have earned, provided he had not been disabled. The jury were entitled to take into account his personal suffering, and also the fact that he was deprived of most of the privileges and enjoyments common to men of his class. While the verdict was high, we are not disposed to disturb it upon the ground that it was so ex-

cessive that the jury must have been actuated by passion and prejudice, nor upon the ground that $30,000 is any more than just compensation under all the circumstances. Union Pacific v. Connolly (Neb.) 109 N. W. 368.

Affirmed.

On January 20, 1908, the following opinion was filed:

PER CURIAM.

On appellant's motion for a rehearing attention is called to the fact that, in the course of the opinion, it was erroneously stated that the case was tried upon the theory that the Wisconsin statute with reference to the erection and maintenance of telltales had no application. The fact was, the case was submitted to the jury upon the theory that the statute had no application, but during the course of the trial, appellant insisted that it had. As stated in the opinion, negligence on the part of the appellant was based upon the claim that appellant constructed a telltale which was not reasonably designed to prevent the ropes from becoming lodged. The statute required that the ropes be suspended from a rod or beam, nothing being said about a platform.

The telltale in question was constructed with a platform thirty inches wide, which it was claimed made a better lodging place for the ropes than a rod or beam. The trial court took the view that the statute had no application because the telltale was erected prior to the time the statute went into effect, and in respect to the negligence charged, the structure did not comply with the statute in any event. Appellant made no special requests to have any particular question with reference to the statute submitted to the jury, and we cannot discover wherein the court erred.

Application denied.