## THOMAS L. SMITH, Respondent, v. THE KANSAS CITY RAILWAYS COMPANY, Appellant.

Kansas City Court of Appeals, May 23, 1921.

1. **NEGLIGENCE: Evidence: Expert Testimony Under the Evidence Held Unnecessary to Show Within What Distance Car Could be Stopped.** Where plaintiff was standing on northbound track waiting for southbound car to pass, with his back to the south, and engrossed in watching the southbound car, which ran 200 feet at rate of twelve miles per hour and stopped, while northbound car

ran two blocks at rate of twenty-five miles per hour, and there was nothing to indicate to motorman that plaintiff was going to get off track, the plaintiff was struck by northbound car, although before collision plaintiff's position was visible to the motorman for a distance of over 400 feet, expert testimony was not necessary to show within what distance the car could have been stopped at the rate it was going, because, under the circumstances, the court and jury could determine, by the use of ordinary common sense, that northbound car could have been stopped within distance it proceeded before striking plaintiff.

2. ———: **Humanitarian Rule: Whether Plaintiff Was in a Position of Danger and Oblivious Thereof Held for Jury.** It was for the jury to say whether position and conduct of plaintiff indicated to motorman that plaintiff was not going to get off track, and was, therefore, in a position of danger and oblivious thereof.

3. **INSTRUCTIONS: Negligence: Humanitarian Rule: An Instruction Requiring the Jury to Find that Motorman Could Have Seen Pedestrian in a Position of Danger and Oblivious Thereof, Before Returning Verdict for Plaintiff, was Sufficient to Submit Question of Plaintiff's Obliviousness of Peril.** Where the undisputed facts showed that motorman had ample time in which to stop car, by exercise of ordinary care, an instruction failing to require the jury to find something in the manner and demeanor of plaintiff to indicate to motorman that plaintiff was oblivious of approaching car, but which instruction required jury to find that motorman saw, or could have seen, plaintiff in a position of danger and "oblivious of said danger, that is, unaware of," sufficiently submitted the question of obliviousness of approaching car.

4. ———: ———: **Under Evidence Element as to safety of passengers Properly Omitted from Instruction on Duty to Stop Car.** Where undisputed facts show that motorman had ample time to stop car, by the use of ordinary care, with a view to the safety of the passengers, it was unnecessary to submit in an instruction, the element of safety to the passengers.

5. ———: ———: **Under Evidence an Instruction Omitting Element of Ordinary Care, not Erroneous Because Said Element Was not an Issue.** Where undisputed facts show that motorman had ample time to have stopped car by use of ordinary care, an instruction submitting the question as to whether motorman had time to stop, or slacken the speed of car, without incorporating therein, the element as to whether he could have done so, by the use of ordinary care, was not erroneous because said element was not an issue.

6. **EVIDENCE:** Motion to Strike: Where Plaintiff was Unconscious and not Able to Employ Surgeon, Motion to Strike from Record Evidence of Plaintiff's Condition Caused by Neglect to Procure Proper Care and Treatment Within a Reasonable Time, Properly Denied. Where plaintiff was substantially unconscious for a period of eleven days after the injury, not in a position to employ a physician or surgeon and his leg was not set and he did not receive proper medical attention until after the period of unconsciousness, defendant's motion to strike from record evidence of plaintiff's condition caused by his alleged neglect to procure proper and competent medical care and treatment, within a reasonable time, was properly denied, as defendant, being responsible for the injury in the first instance, is liable for the unfavorable results occurring by reason of plaintiff's inability to procure competent medical attention, as well as the mistakes of a competent physician, as they are among the consequences that may reasonably result under ordinary circumstances from defendant's negligence.

7. **PLEADING:** Petition: Damages: Allegation as to Injury to Internal Organs Sufficient to Admit Evidence as to Impairment of Functions. Where plaintiff's petition pleads that he was "seriously and permanently injured and crippled, in this, that all of his internal organs were shocked and injured so as to impair their proper functions," there being no allegation limiting the effect of such injuries and the allegation being of a general nature, evidence was admissible under the petition as to plaintiff's inability to control his bowels and urine as the result of the injuries to his kidneys.

8. **TRIAL PRACTICE:** Misconduct of Counsel: Demurrer: Where Defendant Stands upon Demurrer and Offers no Testimony, Argument that Defendant Introduced no Evidence Because it had None, or such as it Had was Unfavorable, is Permissible. It is not error in the argument to the jury by plaintiff's counsel, to refer to the failure of defendant to introduce any testimony, nor to the failure of the defendant to introduce the testimony of its motorman when said testimony was available and to argue that defendant had no testimony, and such as it had was against it, and for that reason defendant introduced none, as defendant in standing on its demurrer must be held to suffer all the consequences, including the legitimate inferences that might be drawn from such action.

9. **INSTRUCTION:** An Instruction in a Humanitarian Case Requiring Pedestrians to Look and Listen before Crossing Street was Properly Refused. In an action founded upon the humanitarian doctrine, an instruction requiring pedestrians crossing tracks of defendant to look and listen before proceeding across, was properly refused.

10. **DAMAGES: Excessive Verdict: A Verdict of $3000 is not Excessive Where Plaintiff Suffered Broken Leg and Internal Injuries.** Where plaintiff's leg was broken in three places which healed so that it was weakened permanently and suffered internal injuries causing him to lose control of his bowels and bladder, a verdict of $3000 cannot be *held* to be excessive, though there was no evidence of plaintiff's age.

Appeal from the Circuit Court of Jackson County. *Hon Willard P. Hall,* Judge.

AFFIRMED.

*C. W. Prince, E. C. Hamilton, E. A. Harris* and *Jas. N. Beery* for respondent.

*E. E. Ball* and *L. T. Dryden* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $3,000 and defendant has appealed.

The facts show that about 5:00 P. M. on the afternoon of January 14, 1919, plaintiff was crossing Holmes street at its intersection with 24th Street, in Kansas City, Missouri. He was walking on the south side of 24th street toward the west. In the center of Holmes street defendant maintained a double street car track running north and south. When plaintiff reached the center of the first or northbound track he noticed a southbound street car about 200 feet to the north, coming at a rate of speed of from 12 to 15 miles per hour. He testified "I thought I would stop there and let this car pass me." The southbound car came to a point nearly opposite to where plaintiff was standing on the northbound track and stopped and while there a northbound car struck plaintiff, knocking him several feet toward the east. The car which struck plaintiff ran several car lengths before it stopped. Before plaintiff stepped upon the northbound car track he looked to the south but could see for a distance of two blocks only, or to the top of a hill, the

grade for the first block from plaintiff to the top of the hill being slight and that for the second block being marked. Plaintiff was standing facing northwest with his back to the south. The car that struck him was proceeding at the rate of 25 to 30 miles per hour.

Plaintiff was carried into a near-by drug store where he regained consciousness for a very short time when he became unconscious and remained substantially in that state for eleven or twelve days. He was taken to the city hospital in an ambulance. His face was bloody, his scalp lacerated and his eyes swollen. Four stitches were taken in his scalp. His leg was broken in three places. He remained unconscious in the surgical ward of the hospital for three days when he grew worse. During this period his leg was temporarily set but the attending physician thought he was suffering from a fracture of the skull and treated him for concussion of the brain, paying but slight attention to the broken leg. This doctor admitted that he made a mistake in diagnosis. At the end of this period he was removed to the death ward where he remained for six or seven days when he regained consciousness and his leg was set and put in a plaster cast. He remained in the hospital about six weeks. After being in the hospital for three days his tongue became so swollen that it was necessary to feed him with a stomach tube; his eyes were swollen, red and discolored; his face was swollen and he had a high fever and involuntary bowel and kidney movements. He suffered fractures of the two bones of his left leg. There was one fracture of the tibia, or large bone, and two of the fibula. The fracture of the large bone mended in such a way that one end overlapped the other and they grew together laterally. This had a tendency to weaken the leg on account of the "weight bearing axis" not being in the center of the bone. At the time of the trial, which was on February 16, 1920, plaintiff's inability to control his bowels was somewhat improved but his kidneys were in no better condition. He was not able to control his

urine at night and to hold it in the day time but for a moment. He was still suffering from weakness in his leg. There was expert testimony that the weakened condition of his leg would be permament.

Defendant's first point is that its instruction in the nature of a demurrer to the evidence should have been sustained. In this connection defendant insists that there was no evidence tending to show within what distance the car that struck plaintiff could have been stopped, with reasonable safety to the passengers, by the motorman in the exercise of ordinary care after he saw or might have seen that plaintiff was not going to get off the track. There is a plain inference from the evidence that plaintiff was on the track with his back turned toward the northbound car, preoccupied or engrossed in watching the southbound car, at the time the northbound car came over the brow of the hill two blocks away. All this was apparent to the motorman who operated the car that struck plaintiff, the motorman's view being unobstructed. There is no direct evidence of the distance from the top of the hill to the point where plaintiff was struck but the southbound car ran 200 feet at the rate of 12 miles per hour and stopped while the northbound car ran the two blocks at the rate of 25 miles per hour, therefore, the northbound car must have run upwards of 416 feet while plaintiff was in full view of the motorman and was making no effort to get off the track but was preoccupied as aforesaid. There was nothing to indicate to the motorman that plaintiff was going to get off the track. It needed no expert testimony to show within what distance the car that struck plaintiff could have been stopped at the rate it was going. Under the circumstances the court and the jury by the use of ordinary intelligence and common sense could determine that the car could have been stopped in that distance under the conditions named. [Latson v. St. Louis Transit Co., 192 Mo. 449, 463; Beier v. St. Louis Transit Co., 197 Mo. 215, 232.] It was for the jury to say whether the posi-

tion and conduct of plaintiff indicated to the motorman that he was not going to get off the track and was therefore in a position of danger and oblivious thereof. [Draper v. K. C. Rys. Co., 199 Mo. App. 485.]

Complaint is made of instructions C-1 and C-2. It is insisted that these instructions do not require the jury to find that there was something in the manner and demeanor of plaintiff to indicate to the motorman that plaintiff was oblivious of the approaching car. These instructions required the jury to find that the motorman saw, or could have seen, plaintiff in a position of danger and "oblivious of said danger, that is, unaware thereof." The instructions therefore fully meet this contention of the defendant. It is further insisted that the instructions in submitting the question of whether the motorman could have stopped the car or slackened the speed thereof in time to have averted the injury, failed to take into consideration the element of safety to the passengers. From what we have said there is nothing in this contention because the undisputed facts show that the motorman had ample time in which to stop the car by the exercise of ordinary care with a view to the safety of the passengers. Instruction C-2 submits the question as to whether the motorman had time to have stopped the car or slackened the speed thereof without incorporating in the submission the element as to whether he could have done these things by the exercise of ordinary care. From what we have said this was not an issue. The undisputed facts show that the motorman had ample time in which to have stopped the car by the use of such care.

It is insisted that the court erred in denying defendant's motion to strike from the record evidence of plaintiff's condition, for the reason that such condition was caused by plaintiff's neglect to have his leg properly treated and cared for within a reasonable time after the accident. The evidence shows that plaintiff's leg was not set until eleven or twelve days after the ac-

cident. Plaintiff was substantially unconscious during all of this time and was not in a condition to employ physicians, competent or otherwise. It is the duty of a party injured to use reasonable care to obviate as far as possible any bad results that might come from the injury and thereby diminish his damages, and under such circumstances it is incumbent upon him to select a physician of good repute. After having done this the patient is not answerable for the lack of care or skill shown by such physician, nor is such lack of skill and the effects thereof admissible to mitigate such person's damages. [Elliott v. Kansas City, 174 Mo. 554; Scholl v. Grayson, 147 Mo. App. 652.] This holding is based upon the proposition that defendant, being the person whose negligence caused the injury, is responsible for the damages resulting to the innocent party injured. The mistakes of a competent physician or surgeon are among the consequences that may reasonably result under ordinary circumstances from defendant's negligence. However, under the facts in this case, as we have already said, plaintiff was in no condition to employ a physician or surgeon, competent or otherwise. His condition was brought about by the negligent conduct of the defendant and it might reasonably be said that such unconscious condition could have been foreseen and, therefore, defendant, being responsible for plaintiff's injury in the first instance, is liable for the unfavorable results that occurred by reason of plaintiff's inability to procure competent medical attention, if such attention was not in fact competent. There was no error in the failure of the court to strike out this testimony.

It is insisted that the court erred in admitting evidence as to the inability of the plaintiff to control his bowels, and to control his urine as the result of injuries to his kidneys, for the reason that such conditions were not pleaded in the petition. There is no merit in this contention. The petition pleads that plaintiff was "seriously and permanently injured and crippled in this, that

. . . all of his internal organs were shocked and injured so as to impair their proper functions.'' The effects or results of such injuries and impairment are nowhere alleged, so this allegation was of a general nature. [Hall v. Coal & Coke Co., 260 Mo. 351; Rearden v. Railroad, 215 Mo. 105, 135.]

Complaint is made of alleged misconduct of plaintiff's counsel in his argument to the jury. At the close of plaintiff's case defendant offered an instruction in the nature of a demurrer to the evidence and the same being overruled the case was closed without defendant putting on any testimony. It appears that the deposition of defendant's motorman was on file and that after the case was closed plaintiff sought to introduce this deposition in evidence. Defendant objected and it was ruled out. In his closing argument to the jury plaintiff's counsel consumed one-third of his time in referring to defendant's failure to introduce any testimony in the case, going so far as to say that the reason defendant did not introduce any testimony was because it would have been against defendant; that if defendant had any defense it would have produced it, and that its failure to produce any evidence was because such evidence would have been against it. In his closing argument plaintiff's counsel again referred to the fact that defendant had introduced no evidence when the evidence of the motorman was available. The court overruled all of defendant's objections to this line of argument and this is assigned as error. We think there is no question but that the argument was legitimate. [City of Kennett v. Const. Co., 273 Mo. 279, 295, 296.]

In this connection it is insisted by the defendant that its position at the close of plaintiff's case was that under the evidence and instructions plaintiff was not entitled to recover. Defendant insists that as it had a right to take this position it was not proper for plaintiff's counsel to say to the jury that the reason that it offered no evidence was that such evidence if produced

would have been against it, and in doing so counsel for plaintiff went outside of the record. There is no question but that defendant had a right to stand on its demurrer but in doing so it must be held to have suffered all the consequences that grew out of such action, including the legitimate inferences that might be drawn by plaintiff's counsel by reason of defendant's failure to introduce any evidence and, especially, that of the motorman. There was nothing to prevent defendant's counsel from telling the jury that it had the right under the law to stand on its demurrer to the evidence and to explain in a legitimate way why it had done so in this case.

Defendant's instructions D-2, D-3 and D-5 were properly refused. The first of these instructions told the jury that there was no evidence that the motorman could have stopped or reduced the speed of the car and thus avoided striking plaintiff. From what we have said this was properly refused. Instructions D-3 sought to tell the jury the duty of pedestrians in crossing the tracks of defendant in reference to looking and listening. This instruction might have been proper in an ordinary negligence case but not in a case founded upon the humanitarian doctrine. Instruction D-5 sought to tell the jury that ''if any of the injuries or any abnormal condition in which you may believe plaintiff to be at this time, was caused or due to his failure to have proper treatment *immediately after the accident,* then the plaintiff in no event can recover for such condition or injuries in this case.'' (Italics ours.) From what we have said this instruction was properly refused.

The complaint that the verdict is excessive is ruled against the defendant. We are somewhat handicapped in passing upon this point by the fact that we are unable to find in the record any evidence as to plaintiff's age but the jury saw him. This circumstance, together with the evidence in the record as to plaintiff's injuries, dispose us not to disagree with the triers of the facts.

The judgment is affirmed. All concur.