# MARCELLA A. CONNOLLY v. THE NICOLLET HOTEL AND OTHERS.

104 N. W. (2d) 721.

July 15, 1960—No. 37,827.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *William T. Egan,* for appellant.

*Murnane & Murnane,* for respondent.

NELSON, JUSTICE.

Action by Marcella A. Connolly against The Nicollet Hotel and others for personal injuries resulting from being struck by falling debris while walking on the Nicollet Avenue public sidewalk in Minneapolis adjacent to the hotel. The action was tried in September 1956 and resulted in a jury award for damages in favor of plaintiff. Defendants subsequently moved for judgment notwithstanding the verdict or for a new trial. The trial court ordered judgment for defendants notwithstanding the verdict but denied their motion for a new trial. Plaintiff appealed from that part of the order granting judgment notwithstanding the verdict. It was reversed in this court. Connolly v. The Nicollet Hotel, 254 Minn. 373, 95 N. W. (2d) 657. Defendants presently appeal from that part of the order which denied their motion for a new trial.

Rule 50.02(2) of Rules of Civil Procedure provides:

"A motion for judgment notwithstanding the verdict may include in the alternative a motion for a new trial. When such alternative motion is made and the court grants the motion for judgment notwithstanding the verdict, the court shall at the same time grant or deny the motion for a new trial, *but in such case the order on the motion for a new trial shall become effective only if and when the order granting the motion for judgment notwithstanding the verdict is reversed, vacated, or set aside.*" (Italics supplied.)

After this court's reversal of the order granting judgment notwithstanding the verdict, the order denying the motion for a new trial became immediately effective. Defendants on April 3, 1959, one day after

judgment was entered in this court in the former appeal, appealed from that part of the order denying a new trial pursuant to M. S. A. 605.08. See, Note, *Time to Appeal in Minnesota,* 35 Minn. L. Rev. 640, 648; McGinley v. Chicago, M. & St. P. Ry. Co. 152 Minn. 48, 187 N. W. 829; Montgomery Ward & Co. v. Duncan, 311 U. S. 243, 61 S. Ct. 189, 85 L. ed. 147; 36 Minn. L. Rev. 672, 688.

■ The sole issue on this appeal is whether the alleged misconduct of counsel for plaintiff in the closing argument interfered with the administration of justice to the substantial prejudice of defendants. Since the matter of granting a new trial for improper remarks or argument of counsel is governed by no fixed rules but rests almost wholly in the discretion of the trial court, the action of the trial court in this regard will be reversed on appeal only for a clear abuse of discretion.[1]

The trial court denied defendants' motion for a new trial and in a memorandum attached thereto said:

"The court has denied the motion for a new trial. The *only prejudicial error* would be the receiving of the testimony of rumors by employees. If this testimony was not in the case, the meat of the nut would be eliminated, only leaving the shell. If the appellate court is of the opinion that the inferences were strong enough that this article was thrown from a hotel window, that the hotel did have notice because of these rumors, and that the hotel did not exercise ordinary care, *then the verdict should stand.*" (Italics supplied.)

Defendants rely upon Ellerman v. Skelly Oil Co. 227 Minn. 65, 34 N. W. (2d) 251, 5 A. L. R. (2d) 886, where this court held, upon the particular facts of that case, that defendant was not subject to unfavorable inference for failure to call employee involved in injury sued for, where employee had been discharged 4 years before trial, *this was made known during the course of the trial,* and such witness was accessible to either party. Mr. Chief Justice Loring stated (227 Minn. 70, 34 N. W. [2d] 254):

"The law is well settled that where an employe who could give

---

[1]See, Wilson v. Sorge, 256 Minn. 125, 97 N. W. (2d) 477; 14 Dunnell, Dig. (3 ed.) § 7102; 19 Id. § 9799.

important testimony relative to issues in litigation is not present *and his absence is unaccounted for by his employer, who is a party to the action,* the presumption arises that the testimony of such employe would be unfavorable to his employer." (Italics supplied.)

The witness in that case was not present at the trial. In the course of the closing argument to the jury, plaintiff's counsel said (227 Minn. 68, 34 N. W. [2d] 253):

"* * * you are deprived of the testimony of one very important witness and that is the testimony of this truck driver. He isn't here, and the only explanation that is made here is that he is discharged from the Skelly Oil Company some four months afterwards."

This was objected to but the objection was overruled by the court. Counsel for plaintiff then continued his argument as follows (227 Minn. 69, 34 N. W. [2d] 253):

"* * * *so in your discretion you may infer that if Horbal was called in this case he would testify to what he told Ellerman, that he spilt this stuff and if he told Ellerman he spilled two or three gallons of this stuff, who knows how much he did spill of it.* * * * Nobody is more disappointed in his failure to be here than I am."

Defendant's counsel again objected but the court overruled the objection. There is no difficulty in coming to the conclusion that plaintiff's counsel in the Ellerman case told the jury that they might in their discretion infer that the witness, if present, would testify adversely to defendant.

A reading of the portions of the closing argument of plaintiff's counsel to which defendants object in the instant case furnishes little if any persuasion that the above rule was violated. The same objection was presented and argued in defendants' reply brief on appeal in Connolly v. The Nicollet Hotel, 254 Minn. 373, 95 N. W. (2d) 657. The parts of the closing argument of which defendants complain are included in the following excerpts therefrom:

"* * * I am not talking about a Jaycee—I am not talking about another employee of the hotel; I am not talking about somebody on the mezzanine or in the lobby; I am talking about the lady who lost

her eye in the public street, and did anybody say that they did one thing to protect her? She is the client I represent. When Mr. Woolsey was on the stand I said: 'What did you do when you learned about these things?' 'Nothing,' he said. 'What did you do about protecting the public on the sidewalks?' 'Nothing,' and that's the situation that this lady finds herself in when she is walking down there along the sidewalk with another lady friend minding her own affairs, and in the next moment she is blind in one eye. What did they do to protect her? Not one thing, and that's by their own statement of the facts, and if anything was done in the way of protecting anybody on that sidewalk, you haven't heard it from their lips; you haven't heard it from any of the 400 employees that they have there; you haven't heard it from the doorman. What would he have said had he been called as a witness in this case? He is their employee. What would these house detectives have told you? Would they even have confirmed that which Mr. Woolsey said about taking one look to see who threw something out of the window? What would the four firemen have said? I say, members of the jury, you have a right to say to yourself if those people would have been helpful to the cause of this hotel it would be reasonable to assume they would have been brought here as witnesses to tell you what they knew; on the other hand, if they knew something that would be harmful to the hotel, that's quite a decent explanation for them failing to be decent in the sense of their own personal interests, but it's not decent in the sense of my client's interest. She is entitled to know the full story.

\* \* \* \* \*

"I am rather amused at the defendant, who would not bring any witness to Court, not one of these people that they said were guarding that hotel. Incidentally, there were four of them that were firemen, there for firefighting purposes and watching for fire. That's the only reason they were there. The other two, as I understood the testimony, they were there to watch the displays of the Jaycees. But, who was to take care of the public? And then they come along and say, 'We did everything we could.' They didn't do anything. That's why this thing happened. Just didn't do anything. So, I say to you, mem-

bers of the jury, how is it that they can so blithely say, 'Ah, Mr. Murnane, you just didn't quite prove your case quite far enough, you haven't got us yet, and we won't bring anybody here to help you.' Ah, they have the right to do so, but I say that under the law of this case you people have the absolute right to apply the duty—to apply your good common sense, your everyday knowledge and experience to the evidence, what you have heard; you have the right to draw any proper inference from that evidence. That is what the Judge will tell you is circumstantial evidence. He will tell you in that connection, and I am not going to quote him directly, because I do not have a direct quote, proof of these things need not be established by direct evidence; circumstantial evidence may be used. The inference must be such to establish the fact contended for more probably than some other in the opposite contention."

The supplemental record filed on this appeal sets forth a colloquy that took place at the opening of the trial, out of the hearing of the jury. Counsel for defendants made a statement to the court with reference to interrogatories served on them stating that he was "not sure whether or not any of those interrogatories would call for the answer to a question as to the names of six witnesses that I found, the first of whom last night." A statement of some length was concluded, "I didn't identify any of these people until last night, your Honor." The colloquy continued, Mr. Murnane speaking for plaintiff and Mr. Egan for defendants:

"The Court: All right.

"Mr. Murnane: Is it claimed that any of these people were eye witnesses to the event under consideration?

"Mr. Egan: No.

"Mr. Murnane: Or that they have any details relating to the happening of the accident under consideration?

"Mr. Egan: No.

"Mr. Murnane: What is claimed they know about this?

"Mr. Egan: They were hired by the hotel as additional employees for the period of the convention to help maintain order, and the firemen to maintain a fire watch and to maintain order. They were in the

hotel for the period of the convention, and some of the interrogatories were framed asking for employees during the period of the convention, your Honor. These names didn't appear on the interrogatories. *I don't know at this time whether I will call them as witnesses, but I didn't want to be foreclosed on the grounds I hadn't answered these interrogatories.*

"Mr. Murnane: Would their identity have been subject to determination prior to last night?

"Mr. Egan: If I had gone down and made some investigation and found this woman, and she had recalled Nelson, maybe there would—I don't know, Charlie, I didn't talk to her until last night, but it was only in connection with the response to a subpoena for some material in connection with this convention that I went down to see if those records could be found, and this conversation came up.

"Mr. Murnane: May I suggest, your Honor, that we cope with that problem if and when it comes up, with the understanding we do not waive any rights under the rules pertaining to the disclosure of witnesses.

"Mr. Egan: I don't concede, your Honor, at this time that the interrogatories would call for the disclosure of these witnesses if they were known to me at the time they were served.

"Mr. Murnane: You don't have to concede anything.

"The Court: There is nothing for the Court to rule on at this time.

"Mr. Egan: That's correct." (Italics supplied.)

Counsel for defendants left the general impression that if he should decide not to call these six persons as defendants' witnesses he would so announce for the benefit of court and plaintiff's counsel in due time. Until such time, it could hardly be expected that plaintiff would walk into the defendants' camp and feel free to call witnesses who had been employed by the defendants during the convention when defendants' counsel had clearly stated that he did not know whether he would call them as witnesses but he didn't want to be foreclosed in his right to do so.

In Zuber v. N. P. Ry. Co. 246 Minn. 157, 166, 74 N. W. (2d)

641, 649, counsel for the Northern Pacific made the following statement in front of the jury before plaintiff rested:

"Before the plaintiff rests, your Honor, I would like to say, that is the way the case is going, we are not going to call any of our trainmen as witnesses. Of course, we have their names and addresses if you want to call them as your witnesses for cross examination. You, of course, can do that but I wanted to tell counsel that before he rested, your Honor."

In the instant case counsel for defendants in his closing argument in effect told the jury that the hotel employees had absolutely no explanation concerning the events preceding the accident and further that:

"The most important thing in this case for you people to remember, it seems to me, is that after trying it for five days, we still do not know the source of the substance which struck this lady's eye. Skilled attorneys have prepared this case, have availed themselves of the method of investigation and pre-trial procedures referred to here, interrogatories to the other parties, depositions of witnesses, and after the case is all over we still don't know where the substance came from that caused this lady to sustain this injury. If we don't know now, and if after all of this work no one can tell us, how could the hotel at the time be asked to take steps to prevent the occurrence of this accident? To me it doesn't sound reasonable. If it can't be explained now, what could we have done at the time to prevent it?"

The question arises whether defendants, having rested without producing any witnesses or any evidence on their behalf, were justified in saying in effect to the jury that defendants' employees knew nothing of the events involved and that had the defendants called any witnesses from among those employed during the period of the convention they would have so testified. Of course, the foregoing argument for the defense and the favorable impression it might well have created before the jury did not have to go unanswered by the plaintiff. Plaintiff's counsel was entitled to argue the facts of the case under applicable rules of law. It was not forbidden ground for plaintiff's counsel to refer to the four firemen and their duties during the convention, nor to call

attention to the fact that the hotel had some 400 employees; to the fact that defendants had refrained from offering any evidence or presenting any witnesses in their own behalf; and to those who were and those who were not still employed by defendants. Defendants in their brief, as an argument for reversal, said:

"In summary, plaintiff's counsel specifically asked the jury to speculate as to what the doorman would have said, what the policeman would have said, and what the four firemen would have said. To this he added a not too carefully veiled suggestion as to what *hundreds* of others would have said. And then he expressly told the jury that it had the *right* to say that if these 'witnesses' had been called, their 'testimony' would have been unfavorable to the hotel."

There is no express statement by plaintiff's counsel to the jury that it had the right to say that if these "witnesses" had been called, their "testimony" would have been unfavorable to the hotel or that in their discretion they had the right to so view it. Neither does it appear that plaintiff's counsel did so impliedly to the extent of substantially prejudicing defendants' rights.

The case of Shockman v. Union Transfer Co. 220 Minn. 334, 19 N. W. (2d) 812, finds application here. The question arose, in that case, whether counsel for plaintiffs might properly comment on defendants' failure to produce a certain witness. It was held that he might. But this court also said (220 Minn. 349, 19 N. W. [2d] 820):

"* * * It is to be noted in this connection that the statement complained of did not state positively that the jury might indulge in such presumption, but rather was limited to counsel's statement that he 'wondered' if there were certain conditions and injuries the doctor would have found which were much worse than Dr. Mickelson stated. *We feel that such language did not violate the above rule, since it was still left to the jury to indulge in the presumption or to disregard it, as in its own judgment it might determine.*" (Italics supplied.)

The fact that defendants' counsel here indicated that he might want to call certain convention employees as witnesses and did not want to be foreclosed from so doing cannot be lightly laid aside or dismissed

from consideration. Mr. Justice Dibell in M & M Securities Co. v. Dirnberger, 190 Minn. 57, 58, 250 N. W. 801, stated the rule to be that:

"When a party fails to produce an available witness who has knowledge of the facts and whose testimony presumably would be favorable to him, *and fails to account for his absence,* the jury may indulge a presumption or draw an inference unfavorable to such party." (Italics supplied.)

In Blumberg v. Palm, 238 Minn. 249, 254, 56 N. W. (2d) 412, 415, this court said:

"* * * An unexplained failure to call a witness or to produce evidence within the control of a party permits an inference that the witness, if called, or the evidence, if produced, would be unfavorable to the party. M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801. The inference may be drawn against a party who fails to testify without explanation. James v. Warter, 156 Minn. 247, 194 N. W. 754; Wilson v. Northwestern Nat. L. Ins. Co. 103 Minn. 35, 114 N. W. 251."

While it is error in this and other jurisdictions to comment on defendant's failure to testify in a criminal case, it is not generally error in a civil case if the party who chooses to make use of that privilege has established a prima facie case.

The rule is well established in most jurisdictions that where the plaintiff makes a prima facie case, failure of a litigant to produce any evidence or any witnesses as to relevant issues warrants the inference that the testimony would be unfavorable to him. See, Beery v. Breed, 311 Ill. App. 469, 36 N. E. (2d) 591. The Illinois court in the Beery case discussed McDuffee's Admx. v. Boston & Maine R. 81 Vt. 52, 69 A. 124, where the Vermont court held that to comment on the failure of defendant to produce any evidence is reversible error, and after an extended review of cases declined to follow that rule. The Illinois court approved the rule that, where the plaintiff makes out his case and the defendant introduces no evidence, an inference arises that the testimony would have been unfavorable to the defendant, citing Stocker v. Boston & Maine R. 84 N. H. 377, 151 A. 457,

70 A. L. R. 1320; Rioux v. Cronin, 222 Mass. 131, 109 N. E. 898; Powell v. Strickland, 163 N. C. 393, 79 S. E. 872; Barber v. Nunn, 275 Mo. 565, 205 S. W. 14; Moore v. Smith (Mo. App.) 255 S. W. 1071; Henderson v. Ball, 193 Iowa 812, 186 N. W. 668; Bone v. Hayes, 154 Cal. 759, 99 P. 172; Howe v. Howe, 199 Mass. 598, 85 N. E. 945; Attorney General v. Pelletier, 240 Mass. 264, 134 N. E. 407; Succession of Levitan, 143 La. 1025, 79 So. 829, 3 A. L. R. 1646, and the rule that if failure to produce testimony creates an unfavorable presumption against the party failing to produce it, comment on such failure is proper, citing Smith v. Kansas City Rys. Co. 208 Mo. App. 139, 232 S. W. 261; Powell v. Strickland, *supra*; Cheraw Motor Sales Co. v. Rainwater, 125 S. C. 509, 119 S. E. 237; Brito v. Newmarket Mfg. Co. 79 N. H. 163, 106 A. 224; Cincinnati N. O. & T. P. Ry. Co. v. Tucker, 168 Ky. 144, 181 S. W. 940; American Steel Foundries v. Kistner, 136 Ill. App. 48. Also see, Carson v. Weston Hotel Corp. 351 Ill. App. 523, 115 N. E. (2d) 800; Petersen v. General Rug & Carpet Cleaners, Inc. 333 Ill. App. 47, 77 N. E. (2d) 58.[2]

Counsel for defendants moved the court at the close of plaintiff's argument to caution the jury by a corrective instruction as follows:

"With reference to his statement that the defendant did not call any witnesses to show what they knew or did not know about this accident,

---

[2]See Annotation, 70 A. L. R. 1326, entitled "Adverse inference from failure of party to produce available witness or evidence, as affirmative or substantive proof," where it is stated:

"It has become a well-established rule that, where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him. 10 R. C. L. p. 884."

In Annotation, 5 A. L. R. (2d) 895, it is stated:

"The rule as to the inference permitted to be drawn from the failure of a party to call as a witness a person available to him is based on the general rule that the failure to produce available evidence justifies an inference that it would be unfavorable, or that reliance on weaker and less satisfactory evidence when better appears to be available justifies the inference that the evidence not produced would be unfavorable."

did not offer one word of evidence, and said, 'We will produce nothing,' on the ground that it's not incumbent upon the defendant to produce evidence in this case, or call witnesses if there is no showing that there are now witnesses still in the employ of the defendant who have any knowledge of this accident or the circumstances surrounding it.

"* * * I submit it's an improper argument, and the jury should be corrected and cautioned, and counsel should be corrected."

There was no reference in this objection that counsel for the plaintiff had suggested that the jury might infer that if certain witnesses had been called by the defendants such witnesses would testify unfavorably to the defendants. No objection on the grounds that the jury had been told they might draw unfavorable inferences because of defendants' failure to call certain witnesses, or any witnesses at all, was made by defendants' counsel during the course of plaintiff's closing argument, affording the court the opportunity to request plaintiff's counsel to desist in that respect, should it have seen fit to do so. Defendants' counsel excepted as follows at the close of the trial court's charge:

"We also except to the Court's failure to instruct the jury that it was not incumbent upon the defendant to produce witnesses from the hotel, and that no inference or presumption against the defendant arises by reason thereof, and that such testimony as stated by plaintiff's counsel would be unfavorable, that is that there is no inference or presumption that these witnesses, if called, would testify unfavorably. That's all."

The foregoing request does not indicate that it was based upon a violation of the specific rule in the Ellerman case, which it now invokes. Defendants assign as error on motion for a new trial the failure of the trial court "to instruct the jury to disregard plaintiff's counsel's closing argument to the effect that defendant's failure to call its employees or any witnesses could be considered by the jury as evidence that such testimony, if produced, would be unfavorable." Defendants argue that the trial court's failure to so caution or instruct the jury constituted an abuse of discretion requiring reversal.

Where the inference is permissible, the trial court may instruct the

jury that it is at liberty to infer from a party's failure to call the witness that, if the witness' testimony were given, it would be unfavorable to that party. It is not error to refuse to give such instruction, for the court is generally not required to instruct the jury as to what inferences of fact may be drawn. Failure of a party to call a natural witness may be proper subject of comment by the adverse party even though the court has refused to instruct the jury as to the inference. This court has held that if the comment is unjustified the error will not warrant a new trial unless the other party can show substantial prejudice thereby. Shockman v. Union Transfer Co. 220 Minn. 334, 19 N. W. (2d) 812; Drown v. Minneapolis St. Ry. Co. 202 Minn. 66, 277 N. W. 423; Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533; Knott v. Hawley, 163 Minn. 239, 203 N. W. 785; Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166.

It is not necessarily error under our decisions to refuse instructions such as were requested in this case for the court is not generally required to instruct the jury as to what inferences may be drawn from a set of facts. That is a matter largely discretionary with the trial court depending upon the circumstances and the features of the evidence produced. Zuber v. N. P. Ry. Co. 246 Minn. 157, 74 N. W. (2d) 641.

McCormick, Evidence, § 249, discusses the subject of failure to call witnesses or produce evidence as follows:

"It is often said that if the witness is 'equally accessible' to both parties, no inference springs from the failure of either to call him. [Referring to Ellerman v. Skelly Oil Co. *supra*.] This can hardly be accurate, as the inference is frequently allowed when the witness could easily be called or subpenaed by either party. What is probably meant is that when so far as appears the witness would be as likely to be favorable to one party as the other, there will be no inference. But even here, it seems that equality of favor is nearly always debatable, and that though the judge thinks the witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary. At least, it would appear in this supposed case of 'equal favor,' if the witness's knowledge is directed toward a particular issue, that then the argument should be available against the party who has the burden of persuasion on that issue."

2 Wigmore, Evidence (3 ed.) §§ 285 to 288, urges this view. See, McCormick, Evidence, § 249, notes 10 and 11; also see, 33 Minn. L. Rev. 423.

In 33 Minn. L. Rev. 424 it is stated, referring to Ellerman v. Skelly Oil Co. *supra*:

"* * * Where, as in the instant case, it appears that the witness is not under the exclusive power of one party to produce and is not especially friendly to one party, there is no inference against either party since the witness is equally available to both. This position has been criticized on the ground that the failure to produce a witness with knowledge of the facts in issue should permit an inference against both parties with the degree of the inference against each to depend upon the circumstances."

A most clarifying statement is by Judge Learned Hand in United States v. Cotter (2 Cir.) 60 F. (2d) 689, 692, where he stated:

"* * * When both sides fail to call a witness who knows something of the facts, their conduct, like anything else they do, is a circumstance which a jury may use. If both can call him and he is impartial, ordinarily it will have little weight; if it appear that he would naturally side with one party, it is reasonable to expect that he does not use him for good reason; and that is fair argument for the other. *More so,* if he is only available to one who alone knows the facts, and there is no other evidence on the issue. Perhaps, as Professor Wigmore puts it (section 288), an inference is, strictly speaking, always proper against each side, but of different weight. Mitchell v. R. R. Co., 68 N. H. 96, 116, 34 A. 674. *A judge is not required to intervene here any more than in any other issue of fact.* * * * But he is not charged with correcting their non sequiturs; the jury are to find these for themselves. *So the judge in the case at bar was not required to correct the argument,* that the failure of the defendants to call the four witnesses was a ground for supposing that they would swear against them. He might have done so, but he need not; *so far as we know, Sears v. Duling, 79 Vt. 334, 65 A. 990, is the only decision to the contrary and it does not persuade us.*" (Italics supplied.)

It is no doubt the rule that a party has no duty to present any more evidence than he considers necessary to establish his view of the controversy, but an unfavorable inference may arise against him for failure to produce a particular witness. State ex rel. Rockwell v. State Board of Education, 213 Minn. 184, 6 N. W. (2d) 251, 143 A. L. R. 503.

We have said repeatedly that a new trial for prejudicial argument is granted only to prevent a miscarriage of justice and that whether a new trial is to be granted therefor rests in the discretion of the trial court whose decision will be reversed only for a clear abuse of discretion.[3] The object of a new trial for misconduct of counsel is not discipline; that the granting of a new trial may be a deterrent of other misconduct is an incidental result. If counsel in his closing argument pursues an improper line of argument which invites or provokes a reply, it is not reversible error if his adversary engages in similar argument, even though such argument might otherwise be objectionable. Misconduct of counsel in argument is always a separate ground for new trial and need not be assigned as error in the motion for new trial. Statements of counsel in his argument which are borne out by the record cannot be deemed prejudicial, and improper remarks of counsel on the trial will not ordinarily constitute a ground for a new trial if he desists when objection is made and the court instructs the jury to disregard them. 19 Dunnell, Dig. (3 ed.) §§ 9799, 9800, and cases cited.

We said in Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814, that it is elementary that counsel when arguing to the jury is entitled to present his client's case forcefully and fairly, and that his efforts are not to be crippled by compelling him to run a course of technical hazards either when he draws factual inferences from con-

[3]See, 19 Dunnell, Dig. (3 ed.) § 9799; Bush v. Havir, 253 Minn. 318, 91 N. W. (2d) 784; James v. Chicago, St. P. M. & O. Ry. Co. 218 Minn. 333, 16 N. W. (2d) 188; Murphy v. Barlow Realty Co. 214 Minn. 64, 7 N. W. (2d) 684; Hinman v. Gould, 205 Minn. 377, 286 N. W. 364; Drown v. Minneapolis St. Ry. Co. 202 Minn. 66, 277 N. W. 423; Gibson v. Iowa Cent. Ry. Co. 115 Minn. 147, 131 N. W. 1057; Whitehead v. Wisconsin Cent. Ry. Co. 103 Minn. 13, 114 N. W. 254, 467.

flicting evidence or when he applies the law to the facts as he, as an advocate, sees them. Although he may not strike foul blows, he may strike hard blows which are not always technically correct. No precise rule can therefore be laid down defining the scope of legitimate argument in summing up a case before a jury. We have recognized that of necessity much latitude must be allowed to counsel. He is rarely limited to the immediate issues in the case but entitled to much latitude in that respect. He may even share his client's prejudices against his adversary so far as they rest on the facts in his case. It is not improper for counsel to comment on the fact that the adverse party failed to produce evidence in his power tending to disprove a relevant fact. Counsel have the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom. If they are borne out by the record, they cannot be deemed prejudicial.

Defendants make the following statements in their brief:

"* * * It is not the intention of defendant or its attorneys to use this appeal as a vehicle to make a personal attack upon plaintiff's counsel. Personalities have no place in proceedings such as this. The defendant does not seek a reversal upon any such basis. * * *

"No one can dispute that this is a close case."

Defendants, in addition to citing the Ellerman case as the one upon which they mainly rely, also cite Olson v. Prayfrock, 254 Minn. 42, 94 N. W. (2d) 540, another personal injury case in which counsel for plaintiff herein was criticized in regard to certain portions of his arguments. The issues involved in the Olson case are in no manner related to the issues involved in the case at bar. Since the criticism was an incidental result but not discipline, it is in no way controlling here.

A reading of the trial court's charge in the instant case can lead only to the conclusion that it was eminently fair, complete, and contained emphatic instructions to the jury that the burden was upon the plaintiff to prove her cause. The trial court was evidently of the opinion, at the close of the arguments when counsel for the defendants first took his exception to that portion of the plaintiff's closing argument in

issue here and suggested that the court caution the jury by a corrective instruction, that the situation did not justify it. The court adhered to his ruling in that respect when the exception was repeated at the close of the charge and likewise, as the memorandum indicates, in ruling on the motion for a new trial. Defendants admit that this is a close case. The record does not indicate that the trial court abused its discretion, and this is especially true in view of the wide discretion which the trial court is entitled to exercise under such circumstances.

Affirmed.

KNUTSON, JUSTICE (concurring specially).

I concur in the result. I think the majority go much further than is necessary in this case.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that under the ruling of this court in Ellerman v. Skelly Oil Co. 227 Minn. 65, 34 N. W. (2d) 251, 5 A. L. R. (2d) 886, a new trial should be granted because of statements made by counsel for plaintiff in his argument to the jury. Statements which I believe compel this result are as follows:

"* * * What did they [Nicollet Hotel] do to protect her [plaintiff]? * * * What would the four firemen have said? * * * members of the jury, you have a right to say to yourself if those people would have been helpful to the cause of this hotel it would be reasonable to assume they would have been brought here as witnesses to tell you what they knew; on the other hand, if they knew something that would be harmful to the hotel, that's quite a decent explanation for them failing to be decent in the sense of their own personal interests, but it's not decent in the sense of my client's interest. She is entitled to know the full story.

\* \* \* \* \*

"I am rather amused at the defendant, who would not bring any witness to Court, not one of these people that they said were guarding that hotel. Incidentally, there were four of them that were firemen, there for firefighting purposes and watching for fire. That's the only reason they were there. The other two, as I understood the testimony, they were there to watch the displays of the Jaycees."

The record discloses that the names of the four firemen as well as those two police officers, together with information as to how they could be located, had been furnished plaintiff's counsel at the commencement of trial; that prior to trial it had also been disclosed to him that these men were no longer in defendants' employment; and finally that they had not been eyewitnesses to the accident.

At the close of the argument, defendants' counsel objected to the above statements by plaintiff's counsel as follows:

"Mr. Egan [defendants' counsel]: If the Court please, the defendant, Nicollet Hotel * * * moves the Court for a corrective and cautionary instruction on the following parts of Mr. Murnane's closing argument with reference—

"The Court: What is that?

"Mr. Egan: With reference to his statement that the defendant did not call any witnesses to show what they knew or did not know about this accident, did not offer one word of evidence, and said, 'We will produce nothing,' on the ground that it's not incumbent upon the defendant to produce evidence in this case, or call witnesses if there is no showing that there are now witnesses still in the employ of the defendant who have any knowledge of this accident or the circumstances surrounding it.

* * * * *

"The Court: Well, I will cover some of it; some of it, if I don't cover it, of course, it will remain. You may take exception to it."

In the charge to the jury no reference was made by the court to the remarks of plaintiff's counsel to which defendants' counsel had taken exception. The latter thereupon excepted further to the charge as follows:

"We also except to the Court's failure to instruct the jury that it was not incumbent upon the defendant to produce witnesses from the hotel, and that no inference or presumption against the defendant arises by reason thereof, and that such testimony as stated by plaintiff's counsel would be unfavorable, that is that there is no inference or presumption that these witnesses, if called, would testify unfavorably. That's all."

This court has stated that, where an employee who could give important testimony relative to issues in litigation in which his employer is a party is not present as a witness and his absence is unaccounted for, opposing counsel may comment to the jury upon the absence of such witness, and make reference to the presumption that then arises that the testimony of such employee would have been unfavorable to his employer. Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166; Schultz v. Swift & Co. 210 Minn. 533, 299 N. W. 7. However, this rule has no application where the absent witness is no longer in the employ of the party to the action and where the burden of proof rests upon the opposing litigant. Where such circumstances are present, no obligation rests upon the employer to present his former employee as a witness and his failure to do so does not create a presumption that the testimony of the latter would have been unfavorable to the former. Ellerman v. Skelly Oil Co. *supra*; Naughton Co. v. American Horse Exch. 49 Misc. 227, 97 N. Y. S. 387; Tuthill v. Belt Ry. Co. 145 Ill. App. 50. In the Ellerman case this court quoted with approval from the Naughton case (227 Minn. 71, 34 N. W. [2d] 254):

"* * * No greater obligation rests upon the defendant to produce him than rests upon plaintiff, if, indeed, there is as much. It appears that he is not now in defendant's employ, or under its control and direction; and, therefore, no presumption unfavorable to defendant is to be attributed to its failure to call him, * * *."

Applying this principle here compels the conclusion that it was prejudicial for plaintiff's counsel to argue that defendants' failure to produce certain described witnesses no longer in defendants' employment whose testimony, if it were deemed material, was available to plaintiff was because defendants knew that the testimony of such witnesses would have been unfavorable to them. Defendants' counsel took proper exception to this line of argument and requested the court for corrective and cautionary instructions with reference thereto. When the court failed to do this, defendants' counsel took further exception and pointed out specifically that "it was not incumbent upon the defendant to produce witnesses from the hotel, and that no inference or presumption against the defendants arises by reason thereof, * * *."

It may well be that this prejudicial argument of plaintiff's counsel was a factor which influenced the jury to return a verdict in plaintiff's favor.

Plaintiff, however, contends that if the remarks indicated were prejudicial they nevertheless were provoked or invited by improper comments of defendants' counsel in his argument, and being in response thereto should not be regarded as ground for reversal, citing Hinman v. Gould, 205 Minn. 377, 286 N. W. 364; 39 Am. Jur., New Trial, § 61. In support of this contention, the following argument of defendants' counsel is relied upon, to wit:

"The most important thing in this case for you people to remember, it seems to me, is that after trying it for five days, we still do not know the source of the substance which struck this lady's eye. Skilled attorneys have prepared this case, have availed themselves of the method of investigation and pre-trial procedures referred to here, interrogatories to the other parties, depositions of witnesses, and after the case is all over we still don't know where the substance came from that caused this lady to sustain this injury. If we don't know now, and if after all of this work no one can tell us, how could the hotel at the time be asked to take steps to prevent the occurrence of this accident? To me it doesn't sound reasonable. If it can't be explained now, what could we have done at the time to prevent it?"

I find nothing in the argument referred to which is not supported by the record. There was no direct testimony as to the substance which struck plaintiff's eye. Substantial investigative and pretrial procedures were engaged in by both sides before trial. Interrogatories were submitted to parties, and depositions taken. Notwithstanding this, no one was able to testify as to the exact substance which struck plaintiff or as to exactly where it came from. Accordingly, it was proper for defendants' counsel to refer to these factors. In so doing, he was carrying out his obligation in defense of his client. The burden of establishing liability rested upon plaintiff, and defendants' remarks directed attention to the failure of proof in certain aspects of the case. This cannot be said to constitute sufficient provocation or justification for plaintiff to then argue that certain witnesses who were no longer in defend-

ants' employ would have testified adversely to defendants if they had been called, particularly where plaintiff knew that the witnesses described knew nothing of the accident and might have been called by plaintiff if she desired their testimony. Ellerman v. Skelly Oil Co. 227 Minn. 65, 34 N. W. (2d) 251.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.